IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

CARRIE LUELLA ALDRICH,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C15-0093

REPORT AND RECOMMENDATION

TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.   Aldrich's Education and Employment Background . . . . . . . . . . . . . . 5
    B.   Medical Evidence Pertinent to Objections Raised by Aldrich . . . . . . 5

V.   CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    A.   ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . . 8
    B.   Objection Raised by Claimant . . . . . . . . . . . . . . . . . . . . . . . . 10
    C.   Reversal or Remand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VII.   RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff Carrie Luella Aldrich on September 21, 2015, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits. Aldrich asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Aldrich requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

Aldrich filed her application for disability benefits on August 22, 2012, alleging disability due to anxiety, depression, dissociative identity disorder, degenerative disc disease, and wrist pain. She alleged she became disabled on May 11, 2012. Her application was denied upon initial review, and on reconsideration. On April 24, 2014, Aldrich appeared via video conference with her attorney before Administrative Law Judge ("ALJ") John E. Sandbothe for an administrative hearing.[1] In a decision dated June 23, 2014, the ALJ denied Aldrich's claim. The ALJ determined Aldrich was not disabled and not entitled to disability insurance benefits because she was functionally capable of performing her past relevant work as a sales attendant. Aldrich appealed the ALJ's decision. On July 27, 2015, the Appeals Council denied Aldrich's request for review. Consequently, the ALJ's June 23, 2014 decision was adopted as the Commissioner's final decision.

On September 21, 2015, Aldrich filed the instant action for judicial review. A briefing schedule was entered on February 5, 2016. On May 5, 2016, Aldrich filed a brief arguing there is no substantial evidence in the record to support the ALJ's finding that she

---

[1] At the administrative hearing, Aldrich was represented by attorney Sherry Pichone. On appeal, Aldrich is represented by her attorneys Karl E. Osterhout and Robert J. Engler.

2

is not disabled and she is functionally capable of performing her past relevant work as a sales attendant. On May 24, 2016, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. Aldrich filed a reply brief on June 14, 2016. On June 15, 2016, Chief Judge Linda R. Reade referred this matter to a magistrate judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Additionally, on April 7, 2016, the parties filed a joint statement of facts addressing the case's procedural history, testimony from the administrative hearing, and Aldrich's medical history. *See* docket number 15. The parties' joint statement of facts is hereby incorporated by reference. Further discussion of pertinent facts will be addressed, as necessary, in the Court's consideration of this matter.

### III. PRINCIPLES OF REVIEW

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the

3

Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'"

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## IV. FACTS

### A. Aldrich's Education and Employment Background

Aldrich was born in 1969. She is a high school graduate. She also earned a two-year Associate of Arts degree in Equine Management through Ellsworth Community College. In the past, Aldrich worked as a bartender, caseworker, and sales attendant.

### B. Medical Evidence Pertinent to Objections Raised by Aldrich

On March 17, 2012, Aldrich was referred by Disability Determination Services ("DDS") to Dr. Carroll D. Roland, Ph.D., for a psychological evaluation. Dr. Roland described Aldrich's presenting issue as follows:

> she is unable to secure and maintain full time competitive employment secondary to being, "insecure about my mental health." When she is stressed, her Dissociative Identity Disorder kicks in and she will, "do things I don't remember doing." This has resulted in two charges of theft for which she had no memory. She indicates an increase risk of dissociating when under stress.

(Administrative Record at 368.) Upon examination, Dr. Roland found some memory impairments, but determined Aldrich could remember 2- and 3-step instructions. Aldrich's responses to the Beck Depression Inventory-II indicated significant depression. Dr. Roland diagnosed Aldrich with dissociative identity disorder, PTSD, major depression, and personality disorder. Dr. Roland assessed Aldrich with a GAF score of 50. Dr. Roland concluded:

> Aldrich . . . appears to be experiencing a Major Depressive Disorder, a Dissociative Identity Disorder and PTSD. Her depression has recently worsened secondary to not being able to afford antidepressants that are more effective than Citalopram. She is fearful of working secondary to finding herself in a stressful situation and experiencing an emergence of her alternate personality. A payee is indicated. It is doubtful that she will be able to tolerate the stress of full time

5

> competitive employment. Memory and cognitive abilities are
> consistent with full time employment.

(Administrative Record at 373.)

On February 19, 2013, Aldrich was again referred by DDS to Dr. Roland for a second psychological evaluation. Upon examination, Dr. Roland found Aldrich endorsed the following symptoms: mild sadness, moderate pessimism, a moderate sense of failure, mild anhedonia, mild guilt feelings, a significant sense of being punished, mild loss of self-esteem, occasional fleeting passive suicidal ideation without plan of intent, crying more than she used to, significant indecisiveness, moderate worthlessness, moderate loss of energy, mild increase in hypersomnia, moderate irritability, moderate increase in appetite, moderate concentration problems, and fatigue. Dr. Roland also addressed Aldrich's dissociative disorder:

> [Aldrich] also continues to have dissociative experiences. She
> showed a photograph of her on an ISU identification card that
> was taken within the last month. Her hair style and color was
> completely different than it is today. [She] has no memory of
> getting her hair cut or highlighted. She also has never had her
> hair cut as short as it is today. In addition to dissociative
> episodes, [Aldrich] has started to experience panic episodes
> during the last year. Her symptoms of panic disorder were
> consistent with her responses to the Beck Anxiety Inventory.

(Administrative Record at 427-28.) Dr. Roland diagnosed Aldrich with dissociative identity disorder, PTSD, major depression, panic disorder without agoraphobia, and personality disorder. Dr. Roland assessed Aldrich with a GAF score of 50. Dr. Roland concluded:

> Aldrich . . . is experiencing recurrent Major Depression,
> Dissociative Identity Disorder, PTSD and a Panic Disorder
> without agoraphobia. Her affective disturbances have
> worsened secondary to not being able to afford the use of
> multiple psychotropics. She continues to be fearful working
> secondary to finding herself in a stressful situation and

> experiences an emergence of her alternate personality. A payee is indicated. It is doubtful that she will be able to tolerate the stress of full time competitive employment. Memory and cognitive abilities are consistent with full time employment.

(Administrative Record at 428.)

In a letter dated April 15, 2014, Aldrich's treating counselor, Pam Hammond, BSW, MSW, LMSW, addressed Aldrich's mental health difficulties. Hammond opined Aldrich "demonstrates symptoms of anxiety and depression that impact her quality of life."[2] Hammond summarized Aldrich's treatment and symptoms for depression, anxiety, and PTSD as follows:

> [Aldrich] has been working diligently in therapy to address symptoms of depression and generalized anxiety; mostly within the scope of posttraumatic stress disorder. She displays symptoms of anxiety and nervousness reflected in difficulty making decisions, memory problems, nightmares, difficulty falling asleep, and difficulty staying asleep if she awakens in her sleep cycle, as well as poor self-control, and poor concentration. In addition, due to her heightened anxiety, she has reduced the area in which she will drive herself, relying instead on finding a driver should she have to travel to a larger, more populated area.

(Administrative Record at 516.) Hammond also noted Aldrich shows depressive symptoms of avoiding interaction with others, thoughts of self-harm, and extremely low self-esteem. Hammond concluded "[i]t has been a quandary for her as she begins to feel somewhat better emotionally and then wants to do more physical activity. Unfortunately, her physical activity is limited and then her depression and anxiety increase."[3]

---

[2] Administrative Record at 515.

[3] Administrative Record at 516.

7

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined Aldrich was not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined Aldrich had not engaged in substantial gainful activity since May 11, 2012. At the second step, the ALJ concluded from the medical evidence Aldrich has the following severe impairments: panic disorder without agoraphobia, PTSD, anxiety disorder, dissociative identity disorder, personality disorder with anti-social and dependent traits, major depressive disorder, history of ADD/ADHD, obesity, degenerative changes to the left wrist and thumb, right elbow and wrist tendon repair, degenerative changes to the cervical and lumbar spine, history of right knee arthroscopic interventions, and history of fibromyalgia. At the third step, the ALJ found Aldrich did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Aldrich's RFC as follows:

> [Aldrich] has the residual functional capacity to perform light work . . . such that she could lift 20 pounds occasionally and

9

>    10 pounds frequently; only occasionally balance, stoop, kneel,
>    crouch, crawl, climb; limited to simple, routine, repetitive-
>    type work; superficial contact with public; and no more than
>    a regular pace[.]

(Administrative Record at 15.) Also at the fourth step, the ALJ determined Aldrich was functionally capable of performing her past relevant work as a sales attendant. Therefore, the ALJ concluded Aldrich was not disabled.

## B. Objection Raised by Claimant

Aldrich argues the ALJ failed to properly consider and weigh the opinion evidence provided by consultative examining source, Dr. Carroll Roland, and her treating counselor, Pam Hammond, BSW, MSW, LMSW. Aldrich further argues that the ALJ's RFC assessment is flawed due to the ALJ's improper consideration of Dr. Roland's and Hammond's opinions. Aldrich concludes this matter should be reversed and remanded for calculation of benefits, or in the alternative, remanded for further consideration of Dr. Roland's and Hammond's opinions.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be "based on all the evidence in the record[.]" *Krogmeier*, 294 F.3d at 1024 (citation omitted). Such evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). While an ALJ must consider all of the evidence in record when determining a claimant's RFC, "the RFC is ultimately a medical question that must find

at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Furthermore, in considering medical evidence, an ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 416.927(c). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

In considering a physician's RFC assessment, an ALJ is not required to give controlling weight to the physician's assessment if it is inconsistent with other substantial evidence in the record. *Strongson*, 361 F.3d at 1070; *see also Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling, 96-8p (July 2, 1996).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an

11

administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In his decision, the ALJ weighed the opinions of Dr. Roland and Hammond as follows:

> As for the opinion evidence, the undersigned has accorded little weight to the opinion of therapist, Pam Hammond, LMHC [(*sic*)]. The opinion was not supported by therapy notes. In addition, it referenced significantly debilitating impairments which were not supported by the medical treatment record. In addition, the undersigned has considered the opinion of Dr. Rolland [(*sic*)] that it was doubtful [Aldrich] could engage in full-time work activity and finds it inconsistent with the preponderance of the record as well as inconsistent with the mental status evaluation. As such, little weight has been accorded the opinion of Dr. Rolland [(*sic*)].

(Administrative Record at 20.)

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quotation omitted). Furthermore, if an ALJ rejects the opinions of a treating or examining physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. § 404.1527(d)(2).

The Court finds that the ALJ has not fully met these requirements. Here, the ALJ simply states in a generic and conclusory manner that "therapy notes," medical treatment records, and "the mental status evaluation" are inconsistent with Dr. Roland's and Hammond's opinions. The ALJ fails to point out any evidence from the record that supports his assertion of inconsistency between Dr. Roland's and Hammond's opinions and any therapy notes, medical treatment records, and/or mental status evaluation(s). Moreover, besides not supporting his assertion with evidence in the record, the ALJ also fails to explain in any manner how Dr. Roland's and Hammond's opinions are inconsistent with any therapy note, treatment note, or mental status evaluation in the record. Because the ALJ failed to adequately address the reasons for the weight he gave to the opinions of Dr. Roland and Hammond, the Court is unable to determine whether the weight given is supported by substantial evidence on judicial review.

Therefore, under such circumstances, and having reviewed the entire record, the Court concludes the ALJ failed to give "good reasons" for rejecting the opinions of Dr. Roland and Hammond. *See Tilley*, 580 F.3d at 680 ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion."). The Court further finds that the ALJ failed in his duty to fully and fairly develop the record with regard to Dr. Roland's and Hammond's opinions. Accordingly, I recommend that this matter should be remanded for further consideration of Dr. Roland's and Hammond's opinions. On remand, the ALJ should provide clear reasons for accepting or rejecting Dr. Roland's and Hammond's opinions and support his reasons with evidence from the record.

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

13

or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to properly address and fully and fairly develop the record with regard to the opinions of Dr. Roland and Hammond. Accordingly, I believe remand is appropriate.

## VI. CONCLUSION

I conclude this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must provide clear reasons for accepting or rejecting the opinions of Dr. Roland and Hammond. The ALJ must also support his reasons for accepting or rejecting Dr. Roland's and Hammond's opinions with evidence from the record. Accordingly, I recommend this matter be remanded for further proceedings as discussed herein.

## VII. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **REVERSE** and **REMAND** this matter to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court.

DATED this 12th day of October, 2016.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA